case number 161078. Okay, Mr. Carano? Yes. You want five minutes for rebuttal? Yes, please. With me today is Ryan Stromsdorf, Aiken Gummel. Mrs. Boyd spent 25 years in the Postal Service, and she retired based on a disability in 2011. Below, she was wrong in two different ways. One, the application of the waiver law, and then two, with respect to the failure to provide her greater deference because she was a retiree and the failure to provide special duty due pro se applicants. With respect to the law of waiver, as the Court knows, waiver requires two elements, two prongs. One, the individual has to be without fault, and then two, that recovery would be against equity and good conscience. With respect to fault, the guidelines of the OPM, as well as the case law, is clear in this issue. If the applicant or the annuitant provides notice of possible overpayment, she is not at fault. That's pretty clear in the law. The facts here in this case are that. But there's still the second prong. Yes, yes. But the opinion below conflates the two elements of waiver, the issue of fault and the issue of equity and good conscience. And Maxwell's case was right on point where there was a conflation of the two points and it was remanded to separate the two issues of the set-aside rule with the determination of fault. But if I understand, your position is that fault has nothing to do with the set-aside obligation and that the error that was committed by the board, or the AJ anyway, was that she conflated the noncompliance with the set-aside rule with the fault, put that under the fault category as opposed to in the equity and good conscience category. Correct. Fine. And that does seem to be what the OPM regulations, the way they sort it out. Sure. But that doesn't seem to be necessarily to make much difference if, in fact, the failure to comply with the set-aside obligation dooms the equity and good conscience prong. And here, the problem is that the board found that she failed to comply with the equity, I mean, with the set-aside obligation. And then it comes down to a question of notice, right? Whether she had notice of that set-aside obligation. Your argument is that, well, she never... I take it you concede that she received the letter June 11th. Yes. But you say she didn't read the boldface portion or understand it on the back which said that you have to have this set-aside if you get double payment. Or she didn't remember it when her payment started, whatever. Just to clarify that issue. So we're not contesting that she got the June 2000 notice. Right. And that's the only notice she had. Or that she understood that she had an obligation to report. So that was one of the contentions. She did, in fact, report eight days after she got the Social Security notice and then one day after she got the Social Security payment in September of 2012. So she complied with that, no doubt. But that was the easy part of the notice. The more difficult part was... And, you know, it says negotiate the checks. I mean, she's not a securities lawyer. She's a postal worker, right? So I'm not sure if that's particularly clear in itself. Second point was that that notice that you refer to is in bold and it says during the first 12 months of payment, set aside the checks. Well, she wasn't getting Social Security payments during those 12 months. She was awarded Social Security payments on the 12th month, which was paid on the 13th month. So her reading of that, or the substantial evidence to support this reading, that she didn't get Social Security during 12 months. She got it post-12 months. And that's, I think, a fair reading or substantial evidence reading of that provision that you noted is on... Or she actually parsed the language in a more refined way to say she understood she wasn't supposed to cash the checks, but she thought that only applied to the first 12 months. I think there's substantial evidence for the latter. Well, I didn't remember you making this argument either below or in the brief. I think that's what you didn't say. Maybe not this succinctly, but we said it was confusing technical language. That's what you said. Yes. Right. Right, but I, again, I agree. This is the first time that I'm hearing this theory. And so that wasn't presented to the board. So what can we do about that? Well, this was, I mean, what the record had, what was in the record was this June 2011 letter. Because of the e-filing over what, inadvertent mistake on the e-filing, or that wasn't her actions. It was her fiancé's actions. She didn't have an opportunity to be heard on knowledge, and she didn't have an opportunity on this issue. So, yes, on the record we have here, although we think that's an error for not allowing her to open the record to have a hearing. But it was just outdated financial information. That's the second problem, yes. Yes, yes, the information that the OPM had, which wasn't provided in the record, that she could have provided if there was a hearing, was outdated but still, it was outdated, but it was still pretty much the same as it probably is right now. It was at least, there was an opportunity for the board to have it if OPM would have produced it. But can we, we couldn't, we can't second guess ultimately, I mean, their determination with respect to how much financial hardship was shown. We agree. Okay, and here they actually, it appears that whatever was missing originally, they looked at because they reduced the repayment amount even more. Right. OPM did and they just agreed with that. Okay, so I don't think that we can get to that question. And yet, so I don't see anything that related to what she felt that she would have submitted that would change the question of whether she was on notice that she wasn't supposed to cash the checks. Not to the notice provision, but if the court would remand back to the board because of the issues of fault or the set-aside, or fault and the set-aside provision, then the board would have the opportunity to take that evidence in for financial hardship. I'm wondering about, you cited the Maxwell case, but one of the things that Maxwell seems to stand for, you may disagree with the reading of it, but as I read that case, it's saying that if you receive the letter from OPM, a letter which presumably this is typical of, then that constitutes notice. You're on notice. So she's received it, but the board's view at least is that she's on notice and therefore, what would there be to decide on remand since she's conceded she received it? Other than your one-year theory. Well, I mean, I think that is relevant. Set aside the one-year theory for us. We don't read Maxwell that stringently. We think Maxwell stands to the proposition that that is a factor to consider, but it's not, it doesn't ipso facto mean that she was on notice and then therefore at fault. So when you say it doesn't ipso facto mean, so what's your argument that she wasn't on notice? Put aside the 12 months, so it's that it was on the back, or that they used the word negotiate, or that… I think it was the context. The context was she got this notice in 2011, and if you look at what she wrote, her own words for the appeal and the petition for review, she seemed to understand, and I think substantial evidence for this, that one, the 12-month period is a cutoff for any adjustment to the annuity, and that, and there was another statement post-2011 where it said that you may, she may be obligated to repay any retroactive Social Security money. But she wasn't paid retroactive Social Security money, she was paid prospective Social Security money. So in her view, in her own words, for the petition for review as well as for appeal, she thought during that period there was no need for repayment. And so do you think that this conflating of the fault and the equity prongs somehow prevented or allowed the board to reach a conclusion with respect to equity without a full analysis of these questions? Yes, I mean, I think, I mean, nowhere in the record does, not that the administrative judge statement of the law, nor the opinions of the board or the NSA judge discuss the notice provision exception that you're not at fault. So that, there's no mention of that exception to fault. As far as the applicability of the set-aside provision, we think there's substantial evidence in Mrs. Boyd's favor that says the set-aside provision is not applicable. Now, you said you didn't read Maxwell the way that I suggested one could read Maxwell. But it seems to me the language is pretty clear. It says, regardless of fault, if the appellant received notice that her FERS annuity payments would be reduced for receipt of Social Security benefits, she was required to set aside that portion of the lump sum necessary to repay the overpayment. So, I mean, she received the notice that she would be required to have a reduced payment, and she was required to set aside. That seems to be what the board's saying. So I'm not sure that notice is anything more than getting the June 11th letter. As I read that, do you read it differently? Maybe. Or do you think that's an incorrect statement of the legal standard? I think it's just factually distinguishable in this case. Going back to the 12-month issue, I mean, you know, I think it's fair to read again, and it's substantial evidence to read, that 12-month being that's the cutoff of any point in time which there wouldn't be any adjustment to the FERS payment. And, indeed, arguably there's a month overlap. The Social Security was awarded in the very 12th month of that period, not paid to the 13th month. I think, in her view, or her understanding, was that there was no set aside to be done. Well, she didn't know the set aside, per se. But there was no need to hold those checks because she was beyond the 12-month period. Well, the 12-month period, though, if you read this language, and I'm really just looking at it for the first time in light of the argument you're making, but it looks like what it's saying is that FERS disability benefit is always going to be reduced if you receive some Social Security benefit. And it is reduced by 100% of the benefit payable for 12 months. So she was on notice that regardless of where she was in the timing period that there was going to be a reduction in her FERS benefit obligation and have an obligation to repay. But at this full stop, what you read is where it stops, right? It doesn't say what happens beyond the 12 months. Yeah, but she knew she was going to have to repay something. But only if, in this case, would that be applicable for, if you supply that rule, for August of 2012. One month. Not five months, one month. If you just supply literally what that says. And the payment she got from Social Security was the following month and the 13th month. So, again, we think the evidence supports... The standard for her is just substantial evidence. We think there's substantial evidence to support the notion that her withholding or cashing or negotiating the check in that circumstance, the set-aside rule should not apply and the court should remand for analysis on financial hardship. Okay. Can I just... One further question. I'm sorry. Now, I'm a little unclear as to the state of the record with respect to the first... I take it OPM lost or otherwise didn't provide the 2013 financial hardship statement, correct? Yes. The board never got that. Right. But they also asked her for the 2014 and she never responded? Starting with basically the appeal... Once the appeal was granted at the board, she signed up for e-filing. So she wasn't getting notices or the board... But this was an earlier communication from OPM asking her for an updated, as I understand it, that was a request from OPM, which she didn't respond to. Not anything to do with the board. Okay. That I'd have to check. Maybe on report I can get back to that. All right. We'll give you three minutes. All right. Thank you. May it please the court. Can I quickly just clarify? Am I wrong about that in thinking that she got a second request from OPM, not from the board, for a hardship paper, an updated hardship, and she didn't respond? You are correct about that, Your Honor. And that was not electronic? That was by mail? That's before she takes her appeal. She gets a letter that says... And this is... The question that Ms. Boyd poses as to was there a missing document, the same letter that says, we have, we OPM have your 2013 document is the same letter that says, but that's out of date anyway, we need a new document. And we don't get that document. That document's not submitted. Now, you're not going to get started at all. So you concede that the fault analysis was wrong? No, Your Honor. We do not concede that the fault analysis was wrong. Well, she did provide notice. Isn't that the end of the inquiry? Well, had she raised the fault, had she raised the prompt notification exception below, then you would move into the second step, the equity question. So she's got to know the regulation better than the board or OPM? No, Your Honor. But either way, and here in her briefing, Ms. Boyd seems to argue both sides. She at times argues I'm without fault, and at other times she argues, oh, prompt notification. Under either one, however, she's not entitled to waiver. And she's not entitled to waiver because... Let's start. I really want to fix on this. The fault analysis was wrong, right? No, Your Honor. How can they say she was with fault when there is the prompt notification regulation that says if you promptly notify, you are not at fault, period? Because that's an exception. If we were to go down that line, and we can, then you'd go into the second part of the analysis. I certainly agree with that, absolutely. This is making me nervous because rather than conceding that there's an error, you're making it seem like this is something that the board or OPM would regularly do, which makes me think maybe we need to remand and say do this over because it was wrong. And to say that a pro se receiver of benefits is supposed to understand the regs better than OPM or the board is a little bit troubling. No, and I'm not trying to suggest that. What I'm suggesting is under either prompt, you get to the same place. Well, but it's important, as the presenting judge has just said, it's important that we not say, oh, well, it doesn't matter whether it's under A or B. It's important that we figure out whether it is indeed, as a starter, under A and B. And it seems to me, as I read the OPM regulations, that fault, just as Judge O'Malley has said, fault is that you took the money, you didn't notify them right away. If you notified them right away, there's an exception to the fault requirement. End of that discussion. Then you move on to the equity and good conscience and an entirely separate section of the regulations says the set-aside rule, if you don't comply with it, it disqualifies you from getting equity and good conscience, but that's not under fault, as I understand it. You're telling us, oh, yes, it is, and I'm not seeing it. Where in the regulations are you finding support for saying that the set-aside, failure to do the set-aside, is part of the fault analysis as opposed to the equity and good conscience? No, I apologize. I've obviously misapprehended the question. No, very clearly the set-aside is part of the equity and good conscience. And the AJ made a mistake then in saying that she failed at the fault stage as opposed to having said, fine, she's fine at the fault stage because of the, that she gave notice that she received this extra payment, but should have said, but moving to the equity and good conscience, that's where she falls down because of the set-aside. Certainly the administrative judge could have ruled that way and would have been correct. And should have ruled that way, right? Not just could. I'm bothered by the kind of might be, could be, this is pretty clear language, and if we're wrong about this, we should know it. And if you're wrong about it, you should really know it because this comes up a lot. So if this is a question that falls under equity and good conscience, we ought to get that straight. And it looks to me like it does. Now, can you tell us straightforwardly it does or it doesn't? It does, Your Honor, it does. Okay. And the AJ made a mistake then by putting it under fault. The AJ should have gone and done the analysis under equity and good conscience, Your Honor. The problem there that that raises for Ms. Boyd is the only argument she raises, both below and now with the assistance of counsel, is financial hardship. Financial hardship expressly cannot satisfy the equity and good conscience part of the test if the first part of the test is resolved because of prompt notification. The only way to satisfy the equity and good conscience once you've given prompt notification is through an error of the board, and the policy guidelines expressly call out that the error is an extreme error such as delay of more than four years. I don't even understand what you just said. I thought her argument was that under equity and good conscience, putting aside the financial hardship, there was the question of whether or not she had been notified to set aside the checks. Well, no, that would go to the fault, but the fault question is, did you know you were getting a double payment? Under equity and good conscience, with the prompt notification exception, what the prompt notification is saying is, okay, we know you realized this, but you gave us notice. I don't think you've got this. I don't think you're reading the OPM guidelines correctly. We've got essentially three different questions. One is, was she at fault? No, she's not, because she gave prompt notification. The next is, was she notified to do the set-aside? And then the third is the financial hardship. The problem with that reading, I think it's two questions. The question is fault. Now, are you disagreeing with Judge O'Malley's reading of the regulations? Because I thought when you and I had a colloquy that you were agreeing with my reading of the regulations, and my reading of the regulations is exactly the same as Judge O'Malley's. I'm disagreeing that once you get into this second step, this equity and good conscience, that there's reason to think about, did the person act at fault at all? Did the person know this? You've stepped beyond that, because the recipient's knowledge is under the first step. The whole point of the prompt notification exception is the recipient is saying, okay, I am aware I'm getting a double payment. I'm giving you notice that I'm getting a double payment. And she did that. And she did that. So she's out of the fault category. And so there's no need to go further into what her mind is. The question is, once she's out of that, can she get waiver? And she can't, because the only way to get waiver at that point, as is stated in the Jones case, for example, and as Your Honor was pointing out previously in the Maxwell case, the only way to get waiver then is this exceptional circumstance where OPM... Okay, except I understand that if OPM sits on their rights for four years or something. But are you saying that the set-aside rule applies without regard to whether she has notice of the need to comply with the set-aside rule? I'm saying the set-aside rule, the whole point of the set-aside rule is it presumes the notice. That's no point of her giving notification. She's saying, I know I've got this double payment. If that's the case, then the only question that the board should have been looking at or the AJ should have been looking at is her financial hardship. No, because once you're under the set-aside rule, financial hardship, and this is expressly written in the policy guidelines, financial hardship is not sufficient to show inequity or show the inequity. The only thing under the set-aside rule that can justify waiver are these exceptional circumstances, specifically an error by OPM, such as this delay, and there's the opening for other exceptional circumstances. So it sounds like what you're saying is that when you get to the set-aside rule, that's an absolute rule. It doesn't require knowledge, should have known, notice, or anything else on her part. Even if the letter had had nothing about set-aside in it, she'd be equally, she'd be in exactly the same position. Is that what you're saying? Well, because when you... Is it what you're saying, yes or no? I think yes, Your Honor. Then what's the point of even looking at fault? Well, and why do we have all these MSPB cases talking about the need for notice, like Maxwell? Maxwell, you'd say, Maxwell, that language about notice is unnecessary? Well, no, because you have... Because if you're going... Because there are two steps. The first step is fault. What we're saying is prompt notification says you got the notice, you got our letter, the Baldwin case, which is this court's decision, says the notice that was provided is sufficient. This notice is sufficient to put the person, make the person aware and put the person at fault if they haven't set aside the money. So the only question then is, is there exceptional circumstances? Notice at that point no longer matters because... So what's the point of the fault exception? The guidelines that say you are not at fault and you're saying, but yeah, but you're still at fault because you still didn't set it aside. It makes no sense. Because in the case that OPM then takes too long or does something otherwise inequal, makes some error to the person who's seeking the benefit, then there would be reason to give waiver. The whole reason this situation exists is we're trying to get these retirement benefits to awardees as quickly as possible, knowing that they may have problems financially, knowing they need money, rather than saying, oh, well, we know you're going to get a double payment down the road, so we're just not going to pay anything and you're just on your own until the Social Security benefit is resolved. So instead of doing that, the retirement benefit is given immediately with the notice that says when you get your Social Security, we're going to have to reduce your benefit. So set it aside, don't pay anything, don't use that money, you're going to have to repay from the first 12 months the benefit. But doesn't that presume that they got notice of don't set it aside? Yes, but that goes back to the fault point and the exception under prompt notification. The prompt notification point is you get the notice, the notice says, notify us, she did. There are two questions here, and we keep complaining. The first is, did she get notice that she was getting double payment? She did. Did she inform OPM that she was getting double payment? She did. The second question is, did she violate the set aside rule? And I understand what you're saying is that she didn't have to get notice of her obligations under the set aside rule because that rule applies automatically if she got notice that she was getting double payments. Is that your position? Am I clear? Maybe that wasn't very clear. Well, I think there's a double notice in there and I'm confused by the question. The Maxwell case and I believe the Harrison case talk about the idea of under a fault there's notice and then they actually then talk about this notice question, notice of the set aside. Okay, but your argument seems to be, if I understand you, that there isn't a notice requirement for the set aside part of it, which is to say if the second half of a letter had never been sent to her, she'd be in exactly the same position. Is that your position? No, we can presume that what the exception says is the only way to get waiver is with these exceptional circumstances. So it doesn't matter. Her argument of, oh, I didn't understand. Does fault matter at all? So the whole fault analysis should just be out the window. Well, once you do the exception, the whole point of the prompt notification exception is to say, yeah, you were at fault but you gave prompt notice so we're not going to worry about fault. The only question is, is there waiver? But you would never have to worry about fault if you are right. You would never have to worry about fault because you just say you shouldn't have gotten a second payment and as long as we didn't do something like wait for four years, then you have to pay it back. So forget about fault. And take the hypo where she doesn't give notice. She gets the letter and she doesn't do anything. Literally doesn't do anything. That would be the incentive, wouldn't it? To never give notice because you're going to be in the same boat regardless. You're creating a disincentive for people to tell you what's going on. I mean, the rules are set up so that the recipient, again, there are other ways that this could be set up, but the rules are set up so the recipient informs OPM of the double payment. Does fault matter? Well, it would matter, for example, if a recipient didn't receive the notice at all. Period. Didn't get it. Recipient would validly say, I was not at fault. I didn't understand this. I didn't know. I didn't get notice. But then the second prompt, though, you say doesn't matter. They would still have the problem. No, then, if they're not at fault, then the recipient could argue financial hardship and say, I didn't know about this. I didn't understand this. I never got your notice. But we know she's not at fault. This is why I'm so confused. But she's not at fault because of the prompt notification exception. Right. That says we understand the elements of fault are here, but you gave prompt notice, which is your statement of you know you're getting these two payments. Right. And therefore, we're not going to, even though you are at fault, exception will go to the second part of the test. And if there are exceptional circumstances under the second part of the test. Can she argue financial hardship at that point? She cannot. The clear language of the policy guideline says financial hardship cannot satisfy the second part of the test if you're relying on this prompt notification exception. Well, if there is no satisfaction of the set-aside rule, which brings us back to the question of whether the set-aside rule has a notice requirement embedded in it. And I'm still not sure I understand whether you're saying it does or it doesn't, which is another way of asking that question is to say if she had never gotten the bold paragraph on the back of the June 11th letter, would she be in exactly the same position? And that's a yes or no question. Really, I'm interested in whether your answer is yes or no. She got no notice of the set-aside requirement. I think if she had gotten no notice, she would not be in the same position, but I think it's because she would not be at fault. Okay. You're saying she wouldn't have gotten the letter. Why would she not be at fault at that point since long ago during this argument, we established that once you have a... you've notified them that you've got the double payment, you're out of the fault category. You're into equity and good conscience. Set-aside has to do with equity and good conscience. So fault is irrelevant at that point. Now, does set-aside rule carry with it an obligation of notice of her set-aside obligation? Does she have to be notified of the set-aside obligation? Which, once again, did she have to get the second half of that June 11th letter? I think, and I'm sorry to say something that I know will not be satisfactory to Your Honor, but I think if you get half of the letter, you have an argument of, I'm not at fault. I didn't understand. I can argue my fault point. The point we're making is when you get to... especially under the set-aside exception, whether you understood it or not, the only way you can get waiver is if OPM made an error that constituted exceptional circumstances. Okay, thank you. Three minutes. Just a couple points. So on the June 21st, 2000 letter, and there's a paragraph on Appendix 92 where it says you have to notify OPM if you're getting Social Security benefits. So Mrs. Boyd, at the very least, notified the board, OPM, pursuant to this letter, pursuant to that paragraph, putting aside the bold text that we talked about earlier. As far as Maxwell, Maxwell, as you pointed out, Judge Bryson, has this language of setting aside the checks, but Maxwell, nonetheless, remanded back to the board to find a determination whether or not the retiree in that case knew or should have known that it was an overpayment. So Maxwell is directly going to consistent with the facts in this case. That's why we're asking this court to remand that despite the notice, it ought to be remanded and that the board ought to review the facts of the case to see if Mrs. Boyd knew or should have known it was overpayment. And that analysis is taken to her age, her physical and mental capabilities, and the information that she was provided by OPM. Going back to my opening argument on that latter part of what she was provided by OPM, we think facially it's, on these facts, confusing. And it would support unsubstantial evidence that Mrs. Boyd did not believe that she was getting overpaid because of the 12-month period and because of the way it was worded throughout her dialogue with the OPM. As far as the... That second argument wasn't raised, right? About the 12-month period? Not, like I said, again, not as that clearly. I think we said it was technical language, confusing language, but we articulated it more here, obviously. As far as the triaging the law, we are with, we understand the board to understand first you find fault on the waiver. If the prompt notification satisfied no fault, the law's straight on that, OPM guidelines are straight on that, that's unequivocal. And the board below nixed the set-aside rule, which falls into the second prong about equity and good conscience. Under the set-aside rule, which the board also didn't do, didn't do the evaluation of Mrs. Boyd's... Didn't consider her age, her mental or physical capabilities... Do you agree there's a distinction with the board's distinction between no notice and no fault? No notice and no fault. I don't think the board made no distinction between notice and fault. The argument that was made was if there's no notice, then we can look at financial hardship. But if there's no fault, then we move over to an analysis of equity and good conscience. No. So they draw a distinction that way. Yeah, I don't think that's the law. That's not the law. I mean, the law's clear on this. You do the fault analysis, and when the retiree or the annuit provides notice, no fault. If they don't provide notice, then you go through the factors and evaluate fault. Once you get... In this case, there's no fault. Then you go to the next problem, which is the equity and good conscience. The set-aside rule is applicable there. Does financial hardship apply as an analysis? No, it doesn't. The set-aside rule is... If this court or the court below found that the set-aside rule was applicable, exceptional circumstances could get you from under that. And if it turns out that either the set-aside rule is not applicable or there is exceptional circumstances, then you go to the financial hardship when you finish the equity or good conscience analysis. Well, now, what exactly is your position with respect to the requirements of the set-aside rule regarding notice? So we rely on... Does she have to have notice of the set-aside rule? No, and I don't think she'd need... in front of her to say, you know, the law. I think she was provided some... But she needs notice of the fact that they're telling her. I don't think he was asking whether she needed to know the rule. I think that's... Well, Maxwell stands for the proposition that even if you have that notice, you still have to do the analysis, right? So Maxwell and Harrison stand for the proposition that even if you provide the notice in which Mrs. Boyd arguably was provided in this case, you still have to do the analysis based on her age, physical, mental capabilities, and what OPM told her. So there isn't... It isn't a conclusion if notice, then the set-aside rule applies. It's if, in this case, you're following Maxwell, that is a prerequisite for then doing the next part of the analysis. Okay. Thank you. And I thank counsel and A.P. Gump for their pro bono work, service, and talent, and to the court. Thank you.